# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Denny Ross,                                             Case No. 5:04CV849

        Petitioner

      v.                                              **ORDER**

Jim Petro,
Attorney General of the State of Ohio, *et al.*,

        Respondents

This state prisoner's habeas case under 28 U.S.C. § 2254 concerns a second-in-time petition filed by Denny Ross, who seeks relief from his 2012 convictions on charges of murder, felony assault, tampering with evidence, and abuse of a corpse.

Magistrate Judge David A. Ruiz has prepared a Report and Recommendation finding that habeas relief is unavailable in light of 28 U.S.C. § 2244(b) because Ross either raised the claims presented in his second-in-time petition in his first § 2254 petition or cannot meet the criteria for raising the remaining claims in his second-in-time petition. (Doc. 111). The Magistrate Judge also recommended, in the alternative, that three of Ross's claims fail because they are not cognizable state-law claims, unexhausted, or procedurally defaulted

Pending are Ross's objections to the R&R and the respondents' response. (Docs. 112, 116).

For the following reasons, I reject the Magistrate Judge's recommendation that the petition is "second or successive" and that § 2244(b)(1) precludes relief. I nevertheless conclude that Ross is not entitled to relief on any of claims. Accordingly, I deny the petition for habeas relief and decline to issue a certificate of appealability.

## Background

In 2012, a jury sitting in the Common Pleas Court of Summit County, Ohio, found Ross guilty of murdering Hannah Hill, felonious assault, tampering with evidence, and abuse of Hill's corpse. The trial court sentenced Ross to an indefinite term of between nineteen years' and life imprisonment. *State v. Ross*, 15 N.E.3d 1213 (Ohio App. 2014).

### A. First Trial

The 2012 trial was the second time that the State of Ohio tried Ross for the Hill murder. The first prosecution, which began in 2000, ended in a mistrial.

During deliberations, the judge received a note from the foreperson concerning a juror who told other jurors that: 1) he wanted to return a verdict quickly so that he could be released from service and deal with a problem at home; and 2) he believed that Ross was guilty because the other suspect in the case had failed a lie detector test, even though that evidence was not introduced at trial. *State v. Ross*, 2002-Ohio-7317, ¶¶3–7 (Ohio App. 2002).

The trial court asked whether the parties would consent to discharging the jury without prejudice to the prosecution; the prosecution agreed, but the defense did not. *Ross*, *supra*, 2002-Ohio-7317 at ¶9. After a hearing, the trial court found that the juror at issue "was considering evidence of guilt that had not been presented at trial" and "was refusing to deliberate in good faith" and, accordingly, orally declared a mistrial. *Id.* at ¶10.

The court then met with the jury in the jury room, reported her declaration of a mistrial, and invited the jurors to speak privately with her in chambers. During those discussions, the court learned "for the first time that the jury had completed and signed verdict forms unanimously finding [Ross] not guilty of the charged offenses of murder, aggravated murder and

rape (though the jury had not yet reached a decision on the remaining two charges, tampering with evidence and abuse of a corpse)." *Ross v. Petro*, 515 F.3d 653, 658 (6th Cir. 2008).

Relying on the uncovered not-guilty verdicts, Ross moved to bar the scheduled retrial on double jeopardy grounds. The judge assigned to hear the motion "found that there had been no manifest necessity for a mistrial," and that "the original trial judge had abused her discretion by declaring a mistrial." *Ross*, *supra*, 2002-Ohio-7317 at ¶13. The court also concluded that the Double Jeopardy Clause barred a retrial. *Id.*

The prosecution appealed, and a divided panel of the Ohio Court of Appeals reversed, holding that there was a manifest necessity for the mistrial ruling and that a retrial was thus permissible. *Ross*, *supra*, 2002-Ohio-7317 at ¶52.

### B. 2004 Habeas Petition

Ross filed his first habeas petition in this court in May, 2004, before the retrial occurred.

The petition, which Ross filed "pursuant to 28 U.S.C. § 2254," alleged that Ross was "subject to unlawful future custody pursuant to a judgment of the Ohio Court of Appeals, Ninth Appellate District." (Doc. 1, PageID 1, 4). Ross sought habeas relief on the ground that a retrial would violate the Double Jeopardy Clause because there had been no manifest necessity to declare a mistrial during the first trial. (*Id.*, PageID 36).

In 2005, the then-presiding District Judge, the Hon. David D. Dowd, granted the petition. *Ross v. Petro*, 382 F. Supp. 2d 967 (N.D. Ohio 2005).

The respondents appealed, and the U.S. Court of Appeals for the Sixth Circuit reversed the grant of the writ in a 2–1 decision. *Ross v. Petro*, *supra*, 515 F.3d 653. The Sixth Circuit held that the "Ohio Court of Appeals' ruling upholding [the trial court's] declaration of mistrial . . . has not been shown to contravene or misapply any holdings of the Supreme Court," and that "the

court of appeals' decision does not represent an unreasonable application of clearly established federal law[.]" *Id.* at 671.

The United States Supreme Court denied certiorari review. *Ross v. Rogers*, 555 U.S. 1099 (2009) (mem.).

### C. Retrial and Related Proceedings

The prosecution re-indicted Ross in July, 2011. (Doc. 99–13, PageID 1293–95).

In May, 2012, before the retrial was set to begin, Ross filed a motion in the Sixth Circuit to recall the mandate. (Doc. 99–35). He claimed that "application of [the court's] recent decision in *Phillips v. Court of Common Pleas, Hamilton Cnty., Ohio*, 668 F.3d 804, 810 (6th Cir. 2012), holding that § 2241 governed pretrial habeas petitions alleging double jeopardy violations, would result in less deferential review of the Ohio Court of Appeals' decision allowing retrial." (Doc. 110–1 at 1, *Ross v. DeWine*, Case Nos. 05-4212 & 05-4213 (6th Cir. June 14, 2012)). Ross asked the Circuit to recall the mandate, remand his petition to the district court for consideration under § 2241, and stay the pending retrial. (*Id.*).

The Circuit denied the motion, finding that there were no "exceptional circumstances" to warrant recalling the mandate:

> Ross was aware that some courts had considered pretrial habeas petitions under
> § 2241, evidenced by his supplemental claim of jurisdiction in the district court.
> The fact that we have now joined those and other circuits in holding that § 2241 is
> the proper avenue for pretrial double-jeopardy claims is therefore not a "grave,
> unforeseen contingency."

(*Id.*, at 2).

In June, 2012, Ross filed his second habeas corpus petition in this court, this time seeking pretrial review of his double jeopardy claim under 28 U.S.C. § 2241. (Doc. 99–40). Ross moved

to stay his state-court retrial pending adjudication of that petition, but I denied his motion in July, 2012. (Doc. 89).

The retrial began in August, 2012. After nearly eight weeks of trial, the jury found Ross guilty on all counts. (Doc. 99, PageID 1066).

Ross took a direct appeal, during which he again litigated his double jeopardy claim.

The Ohio Court of Appeals accepted Ross's position that collateral estoppel did not bar him from raising the claim again because, when the state appellate court issued its first decision in this case, the court had confined its review to the information known to the trial court when she declared a mistrial. *Ross*, *supra*, 15 N.E.3d at 1221–22. In the second appeal, by contrast, Ross based his claim on the jury's completed verdicts, which were unknown to the trial court when she declared a mistrial. *Id.*

Nevertheless, the state appellate court held that the retrial did not violate the Double Jeopardy Clause:

> It is true that the declaration of a mistrial for manifest necessity does not always prevent a trial court from accepting a partial verdict. As a classic example, when jurors are able to unanimously agree on certain counts, but not on others, a trial court may accept their verdicts on the counts for which there is agreement and declare a mistrial on the remaining counts. *See, e.g., State v. Hague*, 61 Ohio App. 3d 756, 761–762 (9th Dist. 1989). *See also State v. Roper*, 9th Dist. Summit No. 20836, 2002-Ohio-7321, ¶ 73, quoting *Oregon v. Kennedy*, 456 U.S. 667, 672 (1982) ("A 'hung jury remains the prototypical example' of manifest necessity."). In such cases, however, deliberations are at an end and the verdict(s) the court accepts are not tentative. A trial court may not enter judgment upon a tentative verdict, even if the tentative verdict is one for acquittal.
>
> *         *         *
>
> [A] mistrial for manifest necessity stemming from a hung jury is materially different than one stemming from the corruption of a juror. See R.C. 2945.36(A) (jury may be discharged without prejudice to the State due to "corruption of a juror"). It has long since been the law that, "in a court of justice, [n]either party [has] a vested right to a corrupt or prejudiced juror, who is not fit to sit in judgment in the case." (Internal quotation omitted.) *Simmons v. United States*, 142

5

U.S. 148, 154–155 (1891). *Accord Washington*, 434 U.S. at 516 ("Neither party has a right to have his case decided by a jury which may be tainted by bias * * *."). As this Court noted in the original appeal in this matter,

> both Ross's interests and those of the State were implicated by the note from the jury foreperson. The note indicated, on its face, that the jury had been tainted with information that should not have been in the jury room and that one of the jurors was refusing to deliberate in good faith. * * *

> The note was an indication of juror misconduct and the information within it was inherently reliable. No evidence that Brad [O']Born (another potential suspect) had passed a polygraph test was presented at trial. For a juror to have gotten this information about the polygraph, he or she would have had to have gotten it from some outside source, suggesting that one of the jurors had disregarded the judge's instructions. According to the note, that juror had also shared the outside information with other jurors. The note further indicated that the juror who had the outside information was willing to agree with anything the others wanted because he was in a hurry to end the deliberations.

> The face of the juror note, therefore, indicated that a member of the jury was refusing to deliberate in good faith and was sharing improper, prejudicial information with other jurors.

*Ross*, 2002-Ohio-7317, 2002 WL 31890088, at ¶ 30–32. Because the jury "had been tainted," the tentative verdicts the jurors reached were also tainted. *Id.* at ¶30–31. We agree with the Sixth Circuit's statement that "it is practically inconceivable that the taints stemming from both the juror corruption and the ex parte communications could have been cured in such a way as to render the tentative verdict forms acceptable as reflective of the jury's final verdict." (Emphasis omitted.) *Ross*, 515 F.3d at 666.

> {¶ 29} The trial court did not err by denying Ross' motions to bar his retrial and to perfect the verdict forms the original jury signed. Because the original trial judge declared a mistrial in the midst of deliberations, the jury's tentative verdicts lacked finality. *See Blueford*, 132 S. Ct. at 2050. More importantly, however, the tentative verdicts could never serve as a final judgment of acquittal because they were the product of a tainted jury.

*Ross*, *supra*, 15 N.E.3d at 1222–24.

The state appellate court rejected Ross's other claims of error and affirmed his

convictions and sentence. Ross sought discretionary review in the Ohio Supreme Court, but that

court declined to hear the case. *State v. Ross*, 140 Ohio St. 3d 1522 (2014). The United States

Supreme Court denied certiorari review. *Ross v. Ohio*, 575 U.S. 970 (2015) (mem.).

Finally, Ross sought postconviction relief, but the Ohio courts rejected his claims. *State*

*v. Ross*, 2014 WL 1921546 (Ohio App. 2014); *State v. Ross*, 140 Ohio St. 3d 1441 (2014).

### D. Amended Habeas Petition

In April, 2016, Ross filed an amended habeas petition "pursuant to 28 U.S.C.

§§ 2241/2254." (Doc. 96–1, PageID 992). The petition raised six claims:

1. Ross's retrial violated his Double Jeopardy rights.

2. Ross's retrial violated his right against Double Jeopardy "because the jury acquitted him of three counts against him."

3. The trial court violated Ross's due process rights by refusing to dismiss the felony-murder and felonious-assault charges as barred by the statute of limitations.

4. The trial court violated Ross's due process rights by admitting prejudicial character and "other acts" evidence

5. The trial court violated his Fourth and Fourteenth Amendment rights by denying a motion to suppress evidence seized pursuant to a search warrant, statements, and identifications.

6. Ross was denied a fair trial when the jury foreperson "liked" a Facebook page dedicated to the victim.

(Doc. 96–1, PageID 995, 1027, 1034, 1036, 1041, 1044).

### E. Magistrate Judge's R&R

The first issue that the Magistrate Judge addressed was the standard of review – namely,

whether § 2241 or § 2254 provided the governing standard.

The Magistrate Judge found that, even though Ross purported to file his second-in-time

petition under 28 U.S.C. § 2241, the petition was subject to, and in fact "governed by the

Antiterrorism and Effective Death Penalty Act of 1996" – specifically, 28 U.S.C. § 2254 and 28

U.S.C. § 2254(d). (Doc. 111, PageID 4055). Although Ross was technically a pretrial detainee when he filed the second-in-time petition in June, 2012, the Magistrate Judge concluded that he became "a person 'in custody pursuant to the judgment of a State court'" after the jury in the second trial returned its verdict, and the trial court imposed sentence, in October, 2012. (*Id.*, PageID 4056) (quoting 28 U.S.C. § 2254(a)).

Next, the Magistrate Judge concluded that Ross's first two claims, presenting alleged violations of his rights under the Double Jeopardy Clause, "have been presented and litigated in an earlier habeas petition . . . and must be dismissed." (Doc. 111, PageID 4062).

As the Magistrate Judge explained:

"AEDPA greatly restricts the power of federal courts to award relief to state prisoners who file second or successive habeas corpus applications. If the prisoner asserts a claim that he has already presented in a previous federal habeas corpus petition, the claim must be dismissed in all cases."

(Doc. 111, PageID 4058) (quoting *Tyler v. Cain*, 533 U.S. 656, 661 (2001)).

After recounting the history of Ross's double jeopardy claims in the state and federal courts, the Magistrate Judge emphasized that "[t]he Sixth Circuit ruled that the state court decision on the double jeopardy claims 'does not represent an unreasonable application of clearly established federal law and that reprosecution of [Ross] is not barred by the Double Jeopardy Clause.'" (*Id.*, PageID 4060) (quoting *Ross*, *supra*, 515 F.3d at 671).

The Magistrate Judge then rejected Ross's argument that the Sixth Circuit's decision in this case was effectively a nullity because Ross's "prior counsel improperly raised his claims [in the first petition] under Section 2254, rather than Section 2241." (Doc. 111, PageID 4061).

Third, the Magistrate Judge recommended that I dismiss Ross's remaining claims under § 2244(b)(2)(B)(ii).

This was so, the Magistrate Judge explained, because even though the factual predicates of these claims arose in connection with Ross's retrial – and after the first round of federal habeas review concluded (thereby satisfying § 2244(b)(2)(B)(i) – Ross could not show that "'the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.'" (Doc. 111, PageID 4063) (quoting 28 U.S.C. § 2244(b)(2)(B)(ii)).

Finally, the Magistrate Judge found that: 1) the statute of limitations and other acts evidence claims were non-cognizable state law claims; and 2) the claims based on the suppression motions were procedurally defaulted and/or barred by *Stone v. Powell*, 428 U.S. 465 (1976). (Doc. 11, PageID 4066–68).

Ross's objections contest the Magistrate Judge's disposition of each of his claims.

## Discussion

### A. Double Jeopardy Claims

Ross first objects that the Magistrate Judge erred in recommending that "Claims 1 and 2 be dismissed because they were previously presented and reviewed in his 2004 § 2254 petition." (Doc. 112, PageID 4082).

According to Ross, "[t]he 2004 Petition . . . is a legal nullity." (Doc. 112, PageID 4082). This is so, Ross contends, because his lawyer "improperly filed the petition under 28 U.S.C. § 2254 thereby subjecting the petition to review under the onerous constraints of § 2254(d)." (*Id.*). Had counsel filed the petition under § 2241 – the proper basis, as the Circuit would later conclude in *Phillips*, *supra*, 668 F.3d at 810, for seeking habeas review of a pretrial double jeopardy claim – the claim would have received de novo review, and Ross allegedly would have

prevailed. (Doc. 112, PageID 4082–83). Maintaining that "[a] judgment predicated on the wrong standard of review is a legal nullity and has no force and effect," Ross goes so far as to claim that I should find "the judgment of the Sixth Circuit" in this very case "is void and null" and review his claims de novo. (*Id.*, PageID 4083).

This latter objection, of course, has no merit. As a District Judge, I have no power to pronounce a judgment of the Sixth Circuit null and void (or even correct or incorrect).

The more substantial question, which Ross's objections to the handling of the double jeopardy claims do not directly raise (but which the remainder of his objections do address), is whether the Magistrate Judge was correct in finding that § 2244(b) required dismissal of Ross's double jeopardy claims. Although the Magistrate Judge concluded that those claims had to be dismissed because they "have been presented and litigated in an earlier habeas petition" (Doc. 111, PageID 4062), the R&R did not address whether the second-in-time petition now before me is "second or successive" for purposes of 28 U.S.C. § 2244(b).

### 1. Second or Successive Petition

AEDPA requires "prisoners challenging state court judgments to seek authorization in a federal appeals court before filing a 'second or successive' application in district court." *In re Stansell*, 828 F.3d 412, 414 (6th Cir. 2016). Although the statute does not define "second or successive," the term "has some basic properties. It amounts to a second or successive attempt to invalidate the judgment authorizing the petitioner's confinement." *In re Caldwell*, 917 F.3d 891, 893 (6th Cir. 2019).

Ross's second-in-time petition is not "second or successive" because it does not attack the same state-court judgment that his first petition attacked.

The judgment under attack in the first petition (which raised a pretrial double jeopardy challenge to the pending retrial) was the 2002 "judgment of the Ohio Court of Appeals, Ninth District" finding that there was a manifest need for a mistrial. (Doc. 1, PageID 4). In contrast, the second-in-time petition challenges the 2012 judgment of the Summit County Common Pleas Court finding Ross guilty at the retrial. (Doc. 96–1, PageID 993 at ¶1).

Because Ross's "first challenge" to the 2012 Summit County judgment "is not a second challenge to it," Ross's second-in-time petition is not subject to § 2244(b). *Caldwell*, *supra*, 917 F.3d at 893. Accordingly, Ross's supposed inability to satisfy the criteria of § 2244(b)(2)(B) provides no basis for dismissing the double jeopardy claims or any other claim in the petition.

### 2. Sixth Circuit's Judgment

Nevertheless, the Sixth Circuit's decision in *Ross v. Petro*, *supra*, 515 F.3d 653, conclusively establishes that Ross is not entitled to relief on his double jeopardy claims.

In the 2004 petition, Ross pleaded this double jeopardy claim:

> Reprosecution of Petitioner will violate his federal right under the Fourteenth Amendment not to be placed twice in jeopardy. Petitioner was acquitted at trial and may not be prosecuted a second time. Furthermore, Petitioner's first criminal trial was terminated without his consent and in the absence of a manifest necessity.

(Doc. 1, PageID 36).

His second-in-time petition pleads the identical claim, though Ross broke the claim up into two grounds for relief:

> Ground For Relief No. I: Reprosecution of Petitioner will and did violate his federal right under the Fifth and Fourteenth Amendments not to be placed twice in jeopardy.

> Ground For Relief No. II: Reprosecution of Petitioner will and did violate his right against Double Jeopardy guaranteed by the Fifth and Fourteenth Amendments because the jury acquitted him of three counts against him.

(Doc. 96–1, PageID 995, 1027).

In its 2008 decision in *Ross v. Petro*, *supra*, the Sixth Circuit held that § 2254(d) precluded habeas relief on Ross's claim that the Double Jeopardy Clause forbade his retrial. As the Circuit explained:

> The circumstances with which Judge Bond was faced were not quite as unique as those presented in *Walls*, but the likelihood of juror misconduct and corruption was even more clearly established. Judge Bond's handling of the matter, like the trial court's handling of the circumstances it faced in *Walls*, could have been better. Yet, as *Washington* makes clear, the manner in which the mistrial ruling was made is not determinative. *See Walls*, 490 F.3d at 438. As long as "the record provides sufficient justification for the state-court ruling," demonstrating that the court did not act "irrationally or irresponsibly," as did the trial judge in *Jorn*, but exercised "sound discretion," the ruling is not constitutionally defective. *Washington*, 434 U.S. at 514, 516-17.

> It follows that the Ohio Court of Appeals's ruling upholding Judge Bond's declaration of mistrial is consonant with the teaching of Washington and has not been shown to contravene or misapply any holding of the Supreme Court. Accordingly, we conclude, with due regard for the principles of comity, finality and federalism that AEDPA is designed to serve, *see Walls*, 490 F.3d at 439 n. 4, that the court of appeals' decision does not represent an unreasonable application of clearly established federal law and that reprosecution of petitioner Denny Ross is not barred by the Double Jeopardy Clause.

*Id.* at 670–71.

The court of appeals added that "the Ohio Court of Appeals did not err by excluding the verdict forms from its review of Judge Bond's mistrial ruling," given the undisputed evidence that the judge was unaware of the verdict forms when she declared a mistrial. *Id.* at 667.

While the prohibition on "second or successive" petitions does not bar Ross from litigating his double jeopardy claims in the present petition, ordinary principles of claim preclusion do.

"A party invoking claim preclusion must show a prior proceeding (1) litigated to a final judgment (2) arising out of the same factual occurrence as the current proceeding (3) involving

the same parties (4) where the non-moving party could have raised the claim at issue." *Arangure v. Whitaker*, 911 F.3d 333, 345 (6th Cir. 2018).

These four elements are satisfied here: 1) the prior habeas case resulted in a final judgment adverse to Ross, with Ross having sought and been denied certiorari review of the Sixth Circuit's decision; 2) the double jeopardy claims in both petitions arise out of the state trial court's declaration of a mistrial during jury deliberations in the first trial; 3) the parties in this case are the same parties who litigated the first round of habeas review; and 4) Ross could have raised, and did in fact raise, the double jeopardy claims in the 2004 petition.

Finally, I agree with the Magistrate Judge's rejection of Ross's argument that I cannot review his second-in-time petition de novo or under § 2241.

As the Magistrate Judge correctly explained, Ross is a person in custody pursuant to a state-court judgment, and a habeas petition filed by such a person is subject to § 2254 and 2254(d). Furthermore, I have no power to declare that the Sixth Circuit's prior judgment is a nullity because it is supposedly "predicated on the wrong standard of review." (Doc. 112, PageID 4083).[1]

Accordingly, habeas relief is unavailable for Ross's double jeopardy rules in light of the Sixth Circuit's judgment in *Ross v. Petro*, *supra*, and rules of claim preclusion.

### B. State Statutes of Limitations

I agree with the Magistrate Judge's alternative recommendation that Ross's third claim is not cognizable in a federal habeas proceeding. (Doc. 111, PageID 4064).

---

[1] I also concur entirely, over Ross's objection (Doc. 112, PageID 4084), in the Magistrate Judge's ruling that the supposed ineffectiveness of Ross's prior habeas attorney does not permit me to disregard the Sixth Circuit's judgment in the first round of habeas review. (Doc. 111, PageID 4061–62).

As another district court within our Circuit has found, "[a] state court's failure to properly apply a state statute of limitations does not violate due process or any other provision of the Constitution or a federal statute, and thus does not provide a basis for granting a writ of habeas corpus." *Burns v. Lafler*, 328 F. Supp. 2d 711, 719 (E.D. Mich. 2004).

But even if the claim were cognizable, Ross did not present this claim in state court as one arising under the federal constitution.

Although his briefing in the Ohio Court of Appeals used the phrase "due process" once in connection with this claim (Doc. 99–50, PageID 1741), the substance of the briefing makes clear that Ross litigated the claim solely as a violation of Ohio law. (Doc. 99–50, PageID 1741–43). Ross's brief discussed only Ohio statute of limitations principles, and he did not cite any federal cases.

Furthermore, the state appellate court's decision establishes that the court understood Ross's claim to present only a state-law issue (namely, whether the limitations period for the felony assault charge was tolled under O.R.C. § 2901.13(H)). *Ross*, *supra*, 15 N.E.3d at 1225–28. Indeed, the state court ruled that, as a matter of Ohio law, the felony assault charge was *not* time-barred, and that there was no limitations period for the murder charge. *Id.* at 1228.

Because Ross did not present the state appellate court with a federal constitutional challenge to the trial court's refusal to dismiss the charges as time-barred, such a claim is procedurally defaulted here. As Ross had not identified any basis for excusing this default, he is not entitled to habeas relief on his third claim.

## C. "Other Acts" Evidence

I also agree with the Magistrate Judge that "Ross has failed to establish that the state court's ruling" allowing "other acts" evidence to prove modus operandi "constitutes such a fundamentally unfair error" warranting habeas relief. (Doc. 111, PageID 4071).

"With regard to evidentiary rulings, the standard for habeas relief is not easily met." *Wilson v. Sheldon*, 874 F.4d 470, 475 (6th Cir. 2017).

"'[F]ederal habeas courts review state court evidentiary decisions only for consistency with due process.'" *Id.* (quoting *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001). "'A state court evidentiary ruling will be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due process rights." *Id.* (quoting *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001)).

Importantly for this case, the Sixth Circuit has held that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Ross's fourth claims fails under *Bugh*.

He contends that the Due Process Clause required the trial court to exclude the testimony of seven witnesses, each of whom offered some form of "other acts" evidence to establish identity and modus operandi. *See Ross*, *supra*, 15 N.E.3d at 1230–36 (state appellate court's decision rejecting this claim). But if there is no clearly established Supreme Court precedent forbidding the use of such evidence to prove propensity, then it follows that no Supreme Court precedent clearly forbids the use of such evidence for the more limited and arguably less overtly prejudicial purposes of establishing identity and modus operandi. *Cf. Bey v. Bagley*, 500 F.3d

514, 521–23 (6th Cir. 2007) (use of "other acts" evidence – a murder that the petitioner confessed to – to establish identity in second murder trial did not violate petitioner's due process rights).

Accordingly, the state appellate court's decision holding that the admission of this evidence did not violate Ross's right to a fair trial was neither contrary to, nor an unreasonable application of, any Supreme Court precedent. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) ("[i]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by" the Supreme Court); *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (same).

### D. Suppression Claims

The Magistrate Judge ruled that Ross failed to exhaust his claims that the trial court violated his Fourth and Fourteenth Amendment rights by denying three suppression motions. (Doc. 111, PageID 4073).

I concur. It is undisputed that Ross did not raise his suppression claims in the Ohio Supreme Court during the direct appeal that followed his retrial. (Doc. 99–65, PageID 2012–27).

In his objections to the R&R, Ross contends "that the efforts to raise the issues in 2012 were futile." (Doc. 112, PageID 4089). Because Ross had filed the same three suppression motions during his first trial, he maintains that "[t]he state courts refused to address the [three] motions to suppress [that he filed during the 2012 retrial] because the issues were resolved in the 1999 proceedings." (Doc. 112, PageID 4089).

But the Ohio Court of Appeals's decision itself refutes this contention:

In his fourth assignment of error, Ross argues that the court erred by denying his motions to suppress without giving him a "full and fair opportunity to have these motions heard." He argues that the motions warranted an evidentiary hearing and

that the trial court erred by summarily denying them without considering relevant authority that has issued since his original trial.

In 1999, Ross filed motions to suppress (1) statements he made to the police while at home and at the hospital, (2) evidence taken from his home pursuant to a warrant, and (3) certain eyewitness identifications. The original trial judge held suppression hearings on Ross' motions, accepted supplemental briefing from both parties, and ultimately denied the motions in an 18–page entry. In January 2012, Ross again filed motions to suppress. All three motions mirrored Ross original motions to suppress, and two of the motions specifically requested that the court simply "reconsider [its] previous ruling." The third, the motion to suppress certain eyewitness identifications, alleged that it raised a different basis for suppressing the eyewitness identifications than did Ross' original motion.

The trial court addressed Ross 2012 suppression motions at a February 7, 2012 status conference. The court indicated that it would hold in abeyance the motions to suppress the eyewitness identifications and statements Ross made at the hospital in order to further review the evidentiary materials attached to those motions. Yet, the court still accepted oral arguments from the parties on each motion. As to the motion to suppress the evidence taken from Ross' home pursuant to a warrant, the court noted that it had reviewed all of the evidence the parties had submitted and had "studied [the] search warrant quite carefully." After hearing arguments from both parties, the court set forth its rationale and denied Ross' motion to suppress the evidence taken from his home. On February 21, 2012, the court journalized its denial of Ross' motion to suppress the evidence taken from his home. The court denied Ross' remaining motions to suppress on February 27, 2012, after having reviewed all of the evidentiary materials the parties submitted regarding those motions.

Because a trial court's ruling on a motion to suppress is an interlocutory ruling, a court may reconsider its initial suppression ruling any time before final judgment. *Stow v. Sexton*, 9th Dist. Summit No. 17263, 1996 WL 11985, *1 (Jan. 10, 1996). *Compare State v. Hartman*, 9th Dist. Medina No. 12CA0057–M, 2013-Ohio-4407, 2013 WL 5532680, ¶ 5–7 (law of the case barred re-litigation of defendant's suppression motion after his final judgment of conviction was overturned on appeal). The fact that a court may reconsider its initial ruling, however, does not mean that the court must begin anew or disregard evidence the court has already received. "It is well established that a trial court may take judicial notice of prior proceedings in the immediate case before it." *State v. Brown*, 9th Dist. Summit No. 24119, 2008-Ohio-5846, 2008 WL 4866602, ¶ 16.

Ross argues that the trial court failed to hold evidentiary hearings on his motions to suppress. There is no dispute, however, that the original trial judge in this matter held hearings on Ross' original motions to suppress. Ross specifically attached testimony from those suppression hearings to his 2012 motions and relied upon it extensively in support of two of his motions. Ross never asked the

court to hold further evidentiary hearings in any of his 2012 motions, in any of his responses to the briefs the State filed in opposition to his motions, or at the February 7, 2012 status conference the court held. He also never objected when the trial court denied his motions without holding further evidentiary hearings. *See State v. Wright*, 9th Dist. Summit No. 25638, 2011-Ohio-5641, 2011 WL 5341294, ¶ 5, quoting *State v. Childs*, 14 Ohio St.2d 56, 61, 236 N.E.2d 545 (1968) ("It is a general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court."). Therefore, Ross, who has not argued plain error, cannot now complain that the trial court erred by failing to hold new evidentiary hearings on his 2012 motions to suppress. *See Wright* at ¶ 5.

Although the trial court wrote in her February 27, 2012 entry that "deference" was due to the original trial judge's ruling on Ross' motions to suppress, the court also went on to address Ross' motions "in an abundance of caution given the unique course of this case." The court ruled on the substantive arguments set forth in each motion, including Ross' argument that a recently enacted statute helped demonstrate why the photo line-up procedure the police used to secure the eyewitness identifications was unduly suggestive. Importantly, Ross has not challenged any of the trial court's suppression rulings on their underlying merits. He merely argues that the court failed to afford him a "full and fair opportunity to have [his] motions heard." The record, however, does not bear out Ross' assertion. The court ruled upon the merits of each motion and did so with the benefit of the evidence taken in the prior proceedings on Ross' initial motions to suppress, the additional arguments and/or law submitted in support of the 2012 motions, and oral arguments from both parties. Ross' argument that the court failed to afford him a "full and fair opportunity to have [his] motions heard" lacks merit. His fourth assignment of error is overruled.

*Ross*, *supra*, 15 N.E.3d at 1228–30.

The state court's decision demonstrates that, though the trial court gave some deference to the original trial judge's resolution of the suppression motions, both the trial and appellate courts did not treat the original decision as conclusive. Indeed, the state appellate court's emphasis on Ross's failure to "challenge[ ] any of the trial court's suppression rulings on their underlying merits," *Ross*, *supra*, 15 N.E.3d at 1230, implies that such challenges were open to Ross in the direct appeal, and that the appellate court would have fairly considered them had Ross raised them.

Accordingly, Ross's futility argument has no merit and cannot excuse his failure to raise the suppression claims in the Ohio Supreme Court. His fifth claim is procedurally defaulted and, in the absence of any basis identified by Ross for excusing the default, provides no basis for habeas relief.

### E. Biased Juror

Ross's final ground for relief alleges that he was denied a fair trial because the jury foreperson had "liked" a Facebook page called "Remembering Hannah Hill" that was dedicated to the woman whom the jury had convicted Ross of murdering.

Ross raised this claim in his postconviction petition, and the trial and appellate courts denied relief. In particular, the state appellate court found that there was no evidence in the record showing that the foreperson had "liked" the page during the trial:

> The only item Ross submitted in support of his petition was an affidavit from his father, Allen Ross. In his affidavit, Allen Ross averred:
>
> 2. That after the verdicts were returned in this case I scanned the internet looking for comments posted regarding my son's conviction. I did this shortly after the verdicts were returned on October 5, 2012. That day was a Friday and I believe it was the next day that I checked;
>
> 3. While browsing the Remembering Hannah Hill website I saw a picture of a woman I recognized as the foreperson of my son's jury. The publication identified her as a person who had become a friend of a website "Remembering Hannah Hill";
>
> 4. The "Remembering Hannah Hill" website is and was a website dedicated to the memory of Hannah Hill, the alleged victim of the murder for which my son was convicted * * *.
>
> Ross argued that the foreperson's identification of herself "as a friend of the Hannah Hill website calls into question her ability to sit as a disinterested juror."
>
> The trial court denied Ross' petition on the basis that it failed to set forth any substantive evidence that juror misconduct had occurred during the trial. The court noted that the trial was over and the jury already had been discharged at the time Allen Ross allegedly saw the foreperson on the Remembering Hannah Hill

website. The court further noted that Ross had not included a copy of the website page with the foreperson's picture in his petition. Because Ross' petition was premised upon "a mere hunch" that misconduct had occurred during the trial, the court concluded that Ross had failed to set forth "sufficient operative facts to establish substantive grounds for relief."

Having reviewed the record, we cannot conclude that the trial court abused its discretion by denying Ross' petition without a hearing. Ross acknowledges on appeal that his father did not visit the website in question until after the court had accepted the jury's verdict and had discharged the jurors from their duties. By then, "the jurors had satisfied their official task and were free to discuss the case." *State v. Williams*, 99 Ohio St.3d 439, 2003–Ohio–4164, ¶ 99. Ross did not produce any evidence that the foreperson joined the website while serving on the jury or that she had, in fact, disregarded her oath to remain impartial during the trial. See *State v. Kiley*, 9th Dist. Lorain No. 12CA010254, 2013–Ohio–634, ¶ 11 (insufficient operative facts alleged where affidavits failed to contain evidence of the content of conversations that jurors were alleged to have had about the case on their cell phones). Any suggestion that the foreperson joined the website before the trial ended or that her membership affected her impartiality during the trial is mere speculation. *See Chesrown*, 2014–Ohio–680, at ¶ 11–12 (post-conviction relief arguments rejected as mere speculation). *See also State v. English*, 9th Dist. Lorain No. 99CA007408, 2000 WL 254912, *4 (Mar. 8, 2000) ("Conjecture built upon insufficiently supported speculation does not establish substantive grounds entitling a defendant to post[-]conviction relief.").

Notably, Ross' petition did not even set forth proof that the foreperson had actually joined the website. Ross did not include a copy of the website page showing the foreperson and/or her name, and, in his affidavit, Allen Ross only averred that he saw a picture of "a woman" who he "recognized as the foreperson." The record supports the trial court's conclusion that Ross failed to allege "sufficient operative facts to establish substantive grounds for relief." *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus. As such, Ross' first assignment of error is overruled.

*Ross*, *supra*, 2014 WL1921546 at *2–3.

Habeas relief is unavailable on this claim because the state appellate court's decision was neither contrary to, nor an unreasonable application of, Supreme Court precedent.

The Sixth Amendment guarantees a criminal defendant the right to trial by an impartial jury. "The constitutional standard of fairness" guarantees the criminally accused "'a fair trial by a panel of impartial, 'indifferent' jurors.'" *Murphy v. Florida*, 421 U.S. 794, 799 (1975) (quoting

*Irvin v. Dowd*, 366 U.S. 717, 722 (1961)). An impartial jury is one in which every juror is "capable and willing to decide the case solely on the evidence before [him or her]." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Even one biased juror violates a defendant's right to an impartial jury. *Morgan v. Illinois*, 504 U.S. 719, 729 (1992).

Bias in this context is "actual bias, or bias in fact: the existence of a state of mind that leads to an inference that the person will not act with impartiality." *Holder v. Palmer*, 588 F.3d 328, 339–340 (6th Cir. 2009).

In this case, the record before the state appellate court was silent on the critical issue: whether the foreperson had "liked" or become a member of the Hannah Hill Facebook page during trial. *Ross*, *supra*, 2014 WL 1921546 at *2. The affidavit from Ross's father established only that, on the day after the verdict had come in, he had seen a picture of the foreperson identified as a friend of the page. *Id.* With no evidence to show that the juror had "liked" the page during trial, it was not unreasonable for the state court to refuse to speculate that the foreperson had, in violation of her oath, showed bias or partiality against Ross (and in favor of the victim) by "liking" the page during the trial.

Accordingly, Ross is not entitled to habeas relief on his sixth claim.

### F. Discovery Motions

Ross has also filed renewed motions for leave to supplement the record and to conduct discovery. (Docs. 113, 114). In a prior order, I denied those motions without prejudice to further consideration in light of my decision to adopt, modify, or reject the Magistrate Judge's recommendation. (Doc. 118).

Having reconsidered the motions in light of this order, I find that there is no basis to permit Ross to supplement the record or engage in discovery.

First, the motion to supplement asks me to add three categories of evidence to the habeas record: 1) the grand jury transcripts of Ross's second reindictment; 2) the complete transcript of Ross's first trial; and 3) the transcript of Ross's trial for raping J.T (one of the "other acts" evidence witnesses who testified at the retrial), which occurred between the first and second murder trials.

The latter two categories of evidence are not relevant given my conclusions in this order that: 1) the Sixth Circuit's prior judgment conclusively forecloses habeas relief on Ross's double jeopardy claims; and 2) there is no clearly established Supreme Court precedent forbidding the use of other acts evidence to establish modus operandi and identity.

Regarding the first category of evidence, Ross's motion does not link the grand jury transcripts with any particular claim in his amended petition. (Doc. 113, PageID 4097). In any event, given my rulings that Ross is not entitled to relief in light of the Circuit's prior judgment, the standard in § 2254(d), and basic principles of procedural default and cognizability, there appears to be no basis or need to add these materials to the record.

Finally, Ross's motion for leave to take discovery concerns his claim of jury bias. (Doc. 114, PageID 4112). He seeks to discover the identities of the jurors, depose the foreperson as well as all other seated and alternate jurors, and take discovery related to the foreperson's Facebook account and the Remembering Hannah Hill page.

I deny this motion in light of my holding that § 2254(d) precludes relief on the juror bias claim.

As the Supreme Court held in *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011), my review "under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Thus, any evidence that Ross might develop by undertaking

discovery could not affect my analysis of his biased juror claim, as I could not consider such evidence without first finding that the state court's decision was unreasonable. *Carter v. Mitchell*, 829 F.3d 455, 465 (6th Cir. 2016) ("*Pinholster* indeed limited the 'record under review' in federal habeas proceedings to 'the record before the state court,' precluding review of evidence developed in federal habeas proceedings.").

Because I have already found that the state court's decision was based on a reasonable application of the law to the facts before it, I could not consider any new evidence that Ross might develop, and allowing him to undertake such discovery would be futile.

For these reasons, I confirm my prior ruling denying Ross's renewed motions for leave to supplement the record and to undertake discovery.

## Conclusion

It is, therefore,

ORDERED THAT:

1. The Magistrate Judge's Report and Recommendation (Doc. 111) be, and the same hereby is, rejected to the extent that it found that Ross's second-in-time petition was "second or successive" under 28 U.S.C. § 2244(B).

2. Ross's objections to the Report and Recommendation (Doc. 112) be, and the same hereby are, sustained to the extent he challenged the finding that his petition was "second or successive" and are otherwise overruled.

3. The amended petition for a writ of habeas corpus (Doc. 96) be, and the same hereby is, denied.

4.      The court's prior ruling denying Ross's renewed motions for leave to supplement

the record and to take discovery (Docs. 113, 114) be, and the same hereby is,

confirmed.

5.      No certificate of appealability will issue.

So ordered.

<u>/s/ James G. Carr</u>
Sr. U.S. District Judge